[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This case came to this court when the plaintiff, Dysart Corporation (Dysart), instituted the present action against the defendant, Seaboard Surety Company (Seaboard), by complaint CT Page 1728 dated December 22, 1992. In count one of the complaint, Dysart alleges that it is claiming unpaid wages under a surety issued by the defendant in accordance with General Statutes § 49-42, the Little Miller Act. In its second count, Dysart is claiming the unpaid wages under a surety issued by the defendant in accordance with General Statutes § 42a-3-203. Counts three and four of the complaint claim that the defendant's denial of liability is without merit in law or fact. The final two counts allege CUTPA claims. Counts three through six are derivative of counts one and two.
The defendant, Seaboard, is the statutorily required surety chosen by the general contractor to bond the public project in accordance with General Statute §§ 49-41 and 49-42. The public project, number 086-87-059N, concerned the construction of a new middle school in Montville, Connecticut. In connection with this project, the contractor hired Diamond Construction as a direct subcontractor. Diamond paid its employees for work performed on the school project by issuing payroll checks. The plaintiff, Dysart, then cashed some of these payroll checks for the Diamond employees. Subsequently, all of these payroll checks were returned to Dysart unpaid. Dysart has been unsuccessful at collecting on any of the payroll checks.
Dysart complied with requirements of General Statutes § 49-42 by giving timely notice to the contractor, the defendant surety company, and the Town of Montville. Notice is not in issue.
Presently before the court are cross motions for summary judgment. Dysart seeks summary judgment in its favor on counts one and two of its complaint claiming that it is entitled to judgment because it is a proper claimant under General Statute § 49-42 and that it is a holder in due course of the payroll checks under General Statutes § 42a-3-203, each argument providing a separate basis to claim payment form the defendant surety. Seaboard seeks summary judgment against the entire complaint and argues that Dysart is not a proper claimant under § 49-42 and that § 42a-3-203 does not apply to these facts.
Both parties to this action, by filing the pending cross motions for summary judgment, have in effect agreed that there are no factual issues in dispute and, therefore, that the only matter left for this court to resolve is in whose favor CT Page 1729 judgment should enter.
The standard for considering a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which entitle him to judgment as a matter of law. Suarez v. Dickmont PlasticsCorp. , 229 Conn. 99, 105, 639 A.2d 507 (1994).
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Id., citing Dowling v. Kielak, 160 Conn. 14,16, 273 A.2d 716 (1970).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . the test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Connell v. Colwell,214 Conn. 242, 246-47, 571 A.2d 116 (1990).
This analysis must begin with a review of the applicable law.
General Statutes § 49-42(a) delineates the class of persons who may enforce a right to payment on a bond furnished pursuant to General Statutes § 49-41. § 49-42(a) begins in very broad terms, providing:
 Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of CT Page 1730 the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment on the bond . . . .
Both parties have thoroughly analyzed and articulately advanced differing viewpoints regarding who is a proper claimant under this statute. It is the defendants' view that § 49-42(a) expressly limits coverage to persons having either a direct contractual relationship with the general contractor, or a direct contractual relationship with a subcontractor. This view eliminates the plaintiff, Dysart, from being a proper claimant under § 49-42.
The plaintiff espouses a different view. The plaintiff agrees that coverage under the statute is limited to those having a direct contractual relationship with a subcontractor, but argues that Dysart is a proper claimant by virtue of both the endorsements and assignments of the payroll checks.
Our Supreme Court has concluded that the legislature intended General Statutes §§ 49-41 and 49-42 to operate in general conformity with the Miller Act, 40 U.S.C. § 270a-270e.American Masons' Supply Co. v. F.W. Brown Co., 174 Conn. 219,223, 384 A.2d 378 (1978).
"Since the purpose of the bond [under § 49-41] is to facilitate the expeditious and uninterrupted completion of public works by furnishing a means through which suppliers of labor and material are afforded protection in extending credit to contractors, the interpretation of the statute should be liberally construed in favor of the intended beneficiaries rather than the surety or principal contractor." OkeeIndustries v. National Grange Mutual Insurance, Superior Court, JD of Hartford-New Britain at Hartford, Docket No. 388643 6 CONN. L. RPTR. 380 (May 11, 1992) (Corrigan, J.) citing InternationalHavester Co. v. L.G. DeFelice Sons, Inc., 151 Conn. 325,333, 197 A.2d 638 (1964).
"Following Fleischer [Fleisher Engineering ConstructionCo. v. United States ex rel. Hallenbeck, 311 U.S. 15, 18,61 S.Ct. 81, 85 L.Ed. 12 (1940)], the lower federal courts, except in cases involving the timeliness of notice, have eschewed the rule of strict construction. As the court observed in UnitedStates ex rel. Hopper Bros. Quarries v. Peerless Casualty Co., CT Page 1731255 F.2d 137, 143 (8th Cir.), cert. denied, 358 U.S. 831,79 S.Ct. 51, 3 L.Ed.2d 69 (1958): `It may be that Congress thought the procedural requirements it prescribed for laborers and materialmen to enforce the right to sue for their pay which is accorded them by the Miller Act were so plain, simple, and easy to comply with that there would seldom be questions about them. But experience is to the contrary and the courts are continually called on to determine whether one deviation or another from the strict letter of the Act necessitates denial of the protection to laborers and materialmen, which the Act aims to provide. The doctrine to which the courts are unanimously committed is that the protection of the laborers and materialmen is the dominant purpose of the Act and a liberal construction of its procedural provisions must be resorted to when necessary to effectuate that purpose.'" OkeeIndustries v. National Grange Mutual Insurance, 225 Conn. 367,374-75, 623 A.2d 483 (1993).
It appears to this court that the plaintiff in this case is suing to recover from the surety under the precise circumstances for which § 49-42 was enacted and as described in these cases. Unless the plaintiff can pursue its remedy on the surety bond, the contribution to a public works project, namely the wages of an immediate subcontractor's employees, will remain uncompensated. The surety was paid a premium to provide security against that very risk.
The defendant argues that Dysart should be denied claimant status and suggests that each employee must maintain an independent action to recover unpaid wages. Such a reading of § 49-42 appears to this court to be contrary to the remedial mature of the statute and the liberal construction the cases suggest it deserves in furthering its purpose. Accordingly, it is found that Dysart is properly before the court as a claimant pursuant to § 49-42.
Seaboard next contends that Dysart should be denied claimant status based on the inapplicability of the Uniform Commercial Code to the case at bar. Dysart counters with the assertion that it is a holder in due course of the unpaid drafts (payroll checks) and is entitled to recover under § 49-42 for its loss.
"[T]he legislature has recently adopted revisions to article 3 of the Uniform Commercial Code designed to limit the CT Page 1732 ability of a surety, in the absence of a showing of prejudice, to avoid paying its obligations under the bond by relying on insubstantial deviations from the contractual relationships between the underlying parties. Although article 3 governs only those suretyship transactions that arise in the context of parties to a negotiable instrument, see General Statutes § 42a-3-102, its provisions are being seriously considered as the basis for broader proposals for a new Restatement of the Law of Suretyship. " Okee Industries v. National Grange MutualInsurance, supra, 225 Conn. 377.
The payroll checks issued by Diamond and endorsed to Dysart by the Diamond employees are found to have constituted checks within the definition of negotiable instruments pursuant to § 42a-3-104. Section 42a-3-203 is entitled "Transfer of an instrument. Rights Acquired by transfer." Under subsection (a) of that statute a "transfer" is found to have occurred here. This court therefore finds, as a matter of law, that the employees endorsed their payroll checks to Dysart for the purposes of enforcing the instruments. Because of that finding, Dysart is therefore properly before this court as a holder in due course enforcing its right to payment under the bond as provided by § 42a-3-203.
For the reasons set forth above, the plaintiff Dysart Corporations's Motion for Summary Judgment, file #116, is granted. The defendant Seaboard Surety Company's Cross Motion for Summary Judgment is denied.